IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MONICA H. SNELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-4073-CV-C-WAK |
| | ) | |
| THE MISSOURI TRANSPORTATION | ) | |
| COMMISSION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Monica Snelson alleges defendants discriminated against her on the basis of her pregnancy. Of the remaining two claims, Count I is a Title VII claim against the Missouri Highways and Transportation Commission and Count II is a Missouri Human Rights Act[1] claim against plaintiff's supervisor, Brenda Rempe, in her individual capacity.

Defendants filed a motion for summary judgment, which has now been fully briefed and submitted.

**Summary Judgment Standard**

Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and

---

[1] Claims under the federal discrimination statutes and the Missouri Human Rights Act are analyzed under the same basic standards. See Finley v. Empiregas, Inc., 975 F.2d 467, 473 (8th Cir. 1992).

admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

### Discussion

In February 2003, plaintiff Monica Snelson[2] began working at the MoDOT credit union in District 4 as a business specialist. She worked with three other employees and they were supervised by defendant Brenda Rempe. Some of plaintiff's duties included working a cash drawer, cutting checks, providing customer service, answering the telephones, working with files and processing loans. During the course of Snelson's employment, defendant Rempe was responsible for or involved in performance reviews for plaintiff Snelson.

Documents submitted to the court indicate defendant Rempe kept notes on plaintiff Snelson and had discussions with her about her attitude, talking and promptness in getting to work. In July 2004, plaintiff issued a check payable to herself on an account owned by her and her fiancé. In doing so, she used a teller key that was assigned to defendant Rempe.

There is some dispute between the parties regarding whether the use of Rempe's teller key was intentional or inadvertent and whether plaintiff received a verbal warning for improperly

---

[2]Plaintiff's name was Monica Hecker when she originally applied for the job.

2

conducting a transaction on her own account.[3]  There is no dispute, however, that plaintiff conducted the transaction.

Plaintiff's performance reviews for the period between April 30, 2003, and April 28, 2004, show mid-year rankings of 1's and 2's (1 = improvement needed; 2 = met expectations), but year-end ratings of 3's ( 3 = exceeded most expectations).  The evaluation format was changed for the following year and the mid-year evaluation listed general comments and expectations rather than numerical ratings.  Most of the comments for the second year, mid-year review were items where Snelson needed improvement or reminders.  It was noted, however, that she had good work knowledge, organization and problem-solving skills.  The second year-end performance review was due in April 2005.

At the end of December 2004, plaintiff told Rempe she was pregnant.  No negative remarks were made, but sometime prior to her discharge, Rempe asked plaintiff how long she expected to be away from work.

On January 20, 2005, defendant Rempe was training an employee on processing a loan on a computer.  The customer was present and near the computer.  Plaintiff Snelson leaned toward the computer and commented on the status of the loan.  After the customer left, Rempe called plaintiff into Rempe's office and had her close the door.  Snelson says Rempe shook her finger close to plaintiff's face and told her she had been rude.  Plaintiff disputed that she had been rude and attempted to explain.  She left the office and was shortly thereafter called back because Rempe didn't like the way she had left.  Snelson finished something she was doing and did not return to Rempe's office the first time she was called back.

---

[3]A progressive disciplinary sheet dated July 15, 2004, and signed by defendant Rempe, has been submitted by plaintiff, which shows a verbal warning was issued. (Plaintiff's Exhibit F.)  Plaintiff contests this document because it is "a 'handwritten' note on a computer-generated daily log."  (Doc. 82 at 8.)  The form states that the completed form should go into the supervisor's working file, i.e., an employee file kept by the supervisor.

Plaintiff submitted two other progressive disciplinary sheets, with meetings dated July and September 2003, regarding other matters that were in the same format.  All forms were completed in handwriting rather than being typed on the computer.  (Plaintiff's Exhibits G and H.)

3

Defendant Rempe and her supervisor, Dean Bolin, discussed the incident, and at some point they spoke with the human resource manager and an assistant to the district engineer. The assistant related the information to the district engineer, and defendants assert the district engineer decided to suspend plaintiff, without pay, for three days.

On January 26, 2005, Rempe and Bolin gave plaintiff a letter from the district engineer setting forth the reasons for and the terms of the suspension. Defendants assert the assistant signed the district engineer's name on the letter, at the direction of the district engineer. Plaintiff was suspended from January 27 through January 31, 2005.

During that same week, defendant Rempe learned plaintiff had added overdraft protection service to approximately thirty customers' checking accounts on Monday, January 24, 2005. Defendant investigated the changes to the accounts and believed the members did not authorize the changes. The overdraft protection service is free. Defendants state, however, that members must provide an initial written authorization to activate the service. Plaintiff asserts it is automatic and there is no policy or requirement that the members apply for the service. The parties do not dispute, however, that the service required activation for it to be applied to an account.

When Snelson returned to work after her suspension, she was called to Rempe's office and asked about the account changes. She admitted making the changes and said she had verbal authorization to do so from nearly all of the customers. She indicated she wasn't sure about two of them, but had added it anyway.

Account holders were surveyed and asked whether they did or did not authorize the service. The responses were generally that they did not authorize the service, although some of them wanted to continue the service that had been added.

Prior to the conclusion of the investigation, however, defendant Rempe completed a "notice of employee discrepancies" form and faxed it, on January 28, 2005, to the bonding company. The form detailed two incidents of improper behavior - one in November 2004, and the one in January 2005. In the November account, Rempe stated plaintiff had attempted to notify a cosigner on a joint note that the extension of time requested by the other signer had been denied. The signers were recently divorced and the request for an extension of time was

4

submitted individually. If the note had become delinquent, both parties would have received notice of the delinquency. Defendant indicated she had talked with plaintiff earlier in the day and told her the letter denying the extension of time should only be sent to the party making the request. She explained it was a privacy issue. Later that day, Rempe saw the envelope addressed to the exhusband and she stopped it from being sent. Rempe told the bonding company that when the matter was discussed with plaintiff, she claimed to have misunderstood.

The second incident, in January 2005, was set forth with an indication that members' accounts had been changed to provide overdraft protection service and that she had reason to believe the changes had not been authorized. She stated at least one member had called to ask why a transfer had been made from his savings account, and he said he had not requested the overdraft protection, but was content to have the service. She indicated to the bonding company that further investigation would occur the following week.

Rempe believed she was required to inform the bonding company of unusual or out of the ordinary behavior which might affect the credit union. She followed up on her fax by sending a copy of the customer surveys.

The bonding company ultimately terminated plaintiff's coverage under the bond.

Defendant discussed the account changes with Bolin, whose account had also been changed, and they prepared to discuss the matter with the assistant and district engineer. Rempe was unable to do so for other reasons, and Bolin followed up with the matter. Part of the discussions included a concern that Rempe had lost faith in plaintiff's ability to follow policy and procedures and that the bonding company had terminated coverage for plaintiff.

Plaintiff's employment was terminated, and she filed a charge with the EEOC and the Missouri Commission on Human Rights. She claims she was suspended and then discharged on the basis of her sex.

In their motion for summary judgment, defendants first note plaintiff limited her administrative charge to her suspension and discharge on February 7, 2005. Thus, they assert she is precluded from asserting her other claims because she did not exhaust her administrative remedies on them, particularly the terms and conditions of her employment. Next, they assert

she did not identify defendant Rempe in her administrative charge, and Rempe is not the person who made the decisions to suspend and discharge plaintiff.

Discrimination in employment on the basis of pregnancy is prohibited under both state and federal law. The Pregnancy Discrimination Act amended Title VII to clarify that pregnancy was included as improper discrimination. 42 U.S.C. § 2000e(k). Discrimination on the basis of pregnancy is also included as prohibited conduct under the Missouri Human Rights Act, Mo. Ann. Stat. § 213.055 (West 2004). Self v. Midwest Orthopedics Foot and Ankle, P.C., 2008 WL 4701333 (Mo. App. Oct. 28, 2008).

To survive a motion for summary judgment, plaintiff must produce either direct evidence that links her termination to gender animus or evidence that creates "an inference of unlawful discrimination through the familiar McDonnell Douglas three-step burden-shifting analysis." Turner v. Gonzales, 421 F.3d 688, 694 (8th Cir. 2005). Here, plaintiff has not come forward with direct evidence of gender discrimination. The one isolated question directed to her about how long she planned to take off work after the baby arrived is not direct evidence linking her discharge to her pregnancy.

Thus, to establish a prima facie case of pregnancy discrimination under the statutes, plaintiff must have evidence that she was a member of a protected class, she was qualified for the job and meeting employer expectations, she suffered an adverse employment decision, and that her pregnancy was a factor in the discharge. Snyder v. Yellow Transportation, Inc., 321 F. Supp. 2d 1127, 1130 (E.D. Mo. 2004) (citing Spencer v. Stuart Hall Company, Inc., 173 F.3d 1124 (8th Cir. 1999)); Schoffstall v. Henderson, 223 F.3d 818, 825 (8th Cir. 2000).

If plaintiff establishes a prima facie case, the burden-shifting analysis set forth in McDonnel Douglas Corp v. Green, 411 U.S. 792, 802-804 (1973), comes into play. Under that framework, after the prima facie case has been established, the burden shifts to defendant to show a legitimate, nondiscriminatory reason for the employment decision. If defendant does so, the burden shifts back to plaintiff to produce "evidence that the proffered reason was merely a pretext for discrimination." Vogan v. U.S. Oncology, Inc., 301 F. Supp. 2d 1038, 1043 (W. D. Mo. 2003).

There is no dispute in this case that Snelson was a member of a protected class and suffered an adverse employment decision. She was a pregnant female who was suspended and then terminated from her job at the credit union.

Defendants assert plaintiff has not met her burden with respect to the two other elements of her claim - that she was meeting her employer's expectations and that her pregnancy was a factor in her suspension and discharge. Plaintiff responds that her performance evaluations show she was meeting or exceeding most expectations and adequately performing her job. She also asserts the mere proximity of her suspension and discharge are sufficient to infer discrimination.

The court finds it is doubtful plaintiff has met these two elements of her prima facie case. First, plaintiff's performance is documented with numerous references to being late, having attitude problems, spending time on personal issues, and otherwise needing improvement even though her actual knowledge and ability to do the job are not questioned. Her second mid-year evaluation clearly documents more areas needing improvement than strengths. Individuals working with customers need to be available, engaged in the work process and relatively pleasant with those around them to meet the expectations of most employers. Further, there is evidence of several isolated incidents where Rempe questioned plaintiff about actions which Rempe believed violated credit union policies and procedures. When considered as a whole, it is not clear plaintiff met her employer's expectations.

Second, "close temporal proximity between an employer's discovery of a protected characteristic and an adverse employment action may, on rare occasions, suffice to create an inference of discrimination. However, '[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue'." Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1020 (8th Cir. 2005).

Here, there is no evidence from which to infer a connection between plaintiff's announcement and her suspension and discharge. She has presented no evidence that any other employee was treated differently because of pregnancy[4] or that she was treated differently after

---

[4]The record indicates that other female employees had pregnancies while employed at the credit union and that they believed they were not treated differently or discriminated against as a result.

the announcement. Plaintiff was counseled about her attitude both before and after she became pregnant. The evidence suggests the incident in January 2005 between Rempe and plaintiff was more antagonistic than previous incidents, and plaintiff's response to Rempe's comments appeared to be less respectful. Thus, the incident was not comparable to prior incidents. Likewise, prior to the announcement of her pregnancy, there was no evidence that plaintiff had altered customer accounts without appropriate authorization - whether verbal or written.

Even if the court were to find that plaintiff had made out a prima facie case, defendants have come forward with legitimate, nondiscriminatory reasons for plaintiff's suspension and discharge. Defendants believed she was disrespectful, did not follow customary practices, made account changes without authorization, and lost her bond, and her immediate supervisor no longer trusted her to follow credit union policies and procedures.[5] It is also worth noting that plaintiff does not dispute she did not have authorization from Bolin to add overdraft protection to his account.

In this circuit, to rebut the legitimate, nondiscriminatory reasons set forth by defendants, plaintiff "must adduce enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence [does] not directly contradict or disprove defendant's articulated reasons for its actions." Davenport v. Riverview Gardens School District, 30 F.3d 940, 945 n. 8 (8th Cir. 1994). Plaintiff has not done so.

In reaching this decision, the court is required to note that it does not sit as a super-personnel department that reviews an employer's business decisions. Instead, the inquiry is limited to whether the employer gave an honest explanation of its behavior. If the articulated reason is not forbidden by law, the court's role is not to decide whether the reason was wise, fair or even correct if it was truly the reason for the adverse action. Wilking v. County of Ramsey, 153 F.3d 869, 873 (8th Cir. 1998).

For these reasons and those set forth in defendants' suggestions, it is

ORDERED that defendants' motion for summary judgment is granted and this case is dismissed. [74] It is further

---

[5] The evidence also indicates defendant Rempe believed plaintiff lied to her about having authorizations to make the account changes.

8

ORDERED that defendants' motion in limine is denied as moot. [88] It is further ORDERED that defendants' motion to exceed the page limit is granted. [86]

Dated this 24th day of February, 2009, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge